2017 7 0 0 3 0 Patrick Henry Murphy versus Lorie Davis you may proceed to the court. Nearly 18 years ago on Christmas Eve 2000 officer Aubrey Hawkins was murdered. He was shot by George Rivas while Rivas and others were robbing an Oshman's store. Five of the other so-called Texas 7 were inside the Oshman's with Mr. Rivas. My client Patrick Murphy was outside in the car. The jury that convicted Mr. Murphy and sentenced him to death as a party in connection with the murder of officer Hawkins did not find that Mr. Murphy was a major participant in that robbery nor did it find that he had acted with reckless disregard with respect to the circumstances that led to the shooting and killing of officer Hawkins. Nevertheless he was convicted and sentenced to death without those findings that of course we argue are required under Tyson against Arizona. The Supreme Court has never held that a jury must find those findings. Has it? I didn't know we were going to get to that issue quite so well. You just mentioned it. We have many procedural issues on the way there. I'm happy to talk about that right now. No the Supreme Court has not held that a jury must make those findings specifically. However ring against Arizona in which the court that the finder of fact that is a jury rather than a judge must make the findings that make someone eligible for death. Ring itself is a case where the culpability was Edmund Tyson culpability. So what had happened in ring was that the Arizona Supreme Court had found that ring was subject to execution after finding that the culpability criteria of Tyson were present and when that case went to the Supreme Court the Supreme Court said the jury has to find those facts. Now has the Supreme Court specifically in the context of a Tyson and when the case reviewed its holding from Cabana against Bullock and specifically held that issue? No. And I will tell you Judge Elrod that if the Texas Court of Criminal Appeals when this case went before that court either on direct review or on state habeas proceedings had looked at the record in this case and said yes well it's true the jury did not find those two factors that are required under Tyson namely reckless indifference as well as major participant. But we the judges on the Texas Court of Criminal Appeals think that those criteria have been satisfied. Then our argument before this court would be precisely whether ring requires that a jury address those questions. Now I understand that Judge Owen's opinion in the Gongora case suggests that the answer to that is no and that an appellate court can reach those findings. I would also submit that Judge Higginbotham's opinion in Hall against Quarterman that I know Judge King did not sign but it was not necessary to the decision in that case which is actually a decision applying the Atkins criteria. Judge Higginbotham's opinion suggests that the Edmund Tyson requirements would have to be found by a jury because they make someone eligible for death. Well and we need to get back to our Miller L responsibilities but but at this stage. But I do have one last question in this area. The state habeas court did make findings that would be satisfactory if they if if the court could make findings those findings are satisfactory under Tyson aren't they? No. You don't believe those findings are satisfactory either? No and the reason why is that what the state habeas court and I'm I'm glad that we're talking about the Texas Court of Criminal Appeals held that on direct appeal Mr. Murphy's argument invoking Edmund and Tyson was inappropriate because it was directed towards the permissibility of his conviction and so the Court of Criminal Appeals misunderstood the argument. The argument wasn't that Tyson and Edmund undermined the conviction but rather that they undermined the sentence and the state habeas court in finding a fact conclusion of law number eighty two says that the applicant never challenged the constitutionality of his conviction under Edmund. So the state habeas court in fact recognizes that the challenge had been to the sentence but what the state habeas court then does after first deferring to the Court of Criminal Appeals and saying that the argument was procedurally defaulted the state habeas court then in findings number ninety three and ninety four which is I think the findings that you're referring to Judge Elrod says that the Edmund Tyson criteria are satisfied but the reason that it says that is because it says that thirty seven oh seven one two B two that is the second punishment phase special issue that was given to the jury in this case is sufficient under Tyson but that is clearly wrong thirty seven that the special instruction did not require that the jury answer the question of whether Murphy had acted with reckless indifference and it did not require that he answer the question of whether Murphy was a major participant in the crime. So if in fact we knew that Mr. Murphy had been convicted under seven oh two B that section of the law of the parties then the thirty seven oh seven one two instruction would not be a problem in this case but the reason that we don't know that is that the jury had four different theories of culpability that it was charged it could find Murphy guilty under and was in given a general verdict form and so we don't know which facts it found and that's why I said at the outset that we the jury that Murphy was recklessly indifferent or a major participant but in addition to that and that's I think an important factor that distinguishes our case from gone Gora's case we don't even have an appellate court saying that the Tyson criteria have been satisfied in this case because the Texas Court of Criminal Appeals misunderstanding the trial objection said that the objection was to the legality of the conviction rather than the sentence the state habeas court then is in a bit of a box because the highest state court has said on direct appeal that the challenge to the punishment wasn't made the state habeas court looks at the trial record and perceives that in fact the objection was to the legality of the punishment but then says it's not a big deal anyway because the so-called anti parties instruction is sufficient to cure that problem with apologies for starting at the end rather than the beginning can you return to what I assume you're going to argue about whether there is a procedural bar or not the question of whether there is a procedural bar is I think illuminated by the provisions in the state habeas courts fact findings that we were just talking about the trial lawyers for Mr. Murphy at two different points in the trial proceedings asked for additional or specific jury instructions that would address the endman Tyson problem that's present in this case the first time that happened was at the end of the guilt punishment phase prior to the charge of the jury and that objection for Mr. Murphy's trial lawyer refers specifically to the endman problem and says that we need an additional question here for the jury because otherwise we're not going to know with this general verdict form whether the two criteria that are required by Tyson have been found by the jury and the if it had been given at the guilt phase of the trial in other words if we knew when the jury came back that they had found Mr. Murphy guilty under 702B then there would not be a Tyson endman problem in this case but we don't know that and so at the end of the punishment phase prior to the record site for the request at the guilt phase what's your record site the record indicates for their objection to the instruction you know I thought when I was trying to look at the various stages because it does seem pertinent whether guilt phase jury determination punishment phase or you could even have a state court habeas jurisdiction decision as to the criteria but I thought at the guilt phase your client said we don't like the word anticipate because it has to be certain yes is that correct yes but that would be a misstatement of Tyson that wouldn't be a that is correct and that's why we say in our pleadings in the court below I believe that we repeat in our pleadings in this court that in so far as Murphy's trial lawyers were arguing that there was a problem not only with respect to punishment but also with respect to guilt we think that that's wrong and we're abandoning that claim so where in the record did they first assert an endman Tyson problem as to punishment well I think it's it's I would say at the end of the guilt phase now I would say that it's a little bit difficult to tell okay if you could give me a page as I did look good so I can tell you I'm I'm looking at the transcript itself and let me the yes I can give you I can give you a page the relevant pages in the record on appeal are 75 37 to 40 35 37 for those are the those that is the colloquy at the end of the guilt phase okay and then the colloquy at the end of the punishment phase is ROA at 82 70 82 70 okay that's helpful thank you did I answer the question that you would ask me judge um now what it was well it was had to do with if there's a procedural bar thank you because it wasn't brought on direct appeal based upon the punishment phase rather than the guilt phase so the answer is no I hadn't answered your question the court of criminal appeals looking at the pages in the record that judge Higginson and I were just talking about concluded that the issue that had been was in fact a challenge to the legality of the conviction and we have reproduced in our in our brief all of issue 18 from the direct appeal proceeding and at the risk of squandering my time since this is in the brief I do think that it's important that I quote the language here standing at the podium issue number 18 is about a paragraph long and it cites and meant and then in the argument under the bold that invokes both 702 B and Edmund Mr. Murphy's because the specific requirements that are required under Edmund before death can be imposed as a possible punishment we're not given to the jury in this case the brief goes on the trial court aired in using language on issues not sanctioned by the Edmund case which calls for reversal and new punishment hearing or rendering of a life sentence there is simply not a challenge to the legality of the conviction in issue number 18 issue number 18 says that what we don't have in this case are the criteria that must be found prior to a lawful imposition of a death sentence following Edmund and Tyson but because the citation wasn't given to the punishment phase at that time in the brief and it could be read as a challenge to the conviction and isn't it a reasonable way for the state court to read it and then if it reads it that way and it's within the realm of reasonableness of reading it we are still bound to not review it under Gardner isn't that the law if the state courts reading were reasonable then that would be the proper conclusion however there are at least two reasons or three reasons that the state courts conclusion is not plausible number one the language of issue 18 itself that I just read cannot possibly cause somebody who's reading that sentence to think that this person is challenging the legality of the conviction all that it talks about is a permissibility of death that's number one number two judge Elrod if you were to try to think of some reason that maybe the Texas Court of Criminal Appeals entirely misunderstood this and then go back and look at the pages in the jury charge that Judge Higginson and I were just talking about and so you say oh well this is all sort of confusing and so because these pages are being cited I think maybe he is challenging the conviction the problem with I think that is that as you will see when you look at those pages there is a whole lot of this conversation between Mr. Murphy's trial lawyers and the judge that happened off the record and so it's somewhat illiberal to say that this is a elliptical and the same thing happens when you get to the objections at the conclusion of evidence in the punishment phase there's a reference to previous conversations that they've had previous motions that they've had and so even though Mr. Murphy's trial lawyers are specifically invoking Edmund and Tyson I will confess that reading that it is quite clear that they're referring to other conversations and exchanges that have happened previously but all of that aside the Texas Court of Criminal Appeals in its direct appeal doesn't cite those pages during the jury instructions and the charge prior to giving the jury if the Texas Court of Criminal Appeals were saying we're very confused because it looks here like all you're objecting to is the conviction rather than the punishment you would expect in the direct appeal for the Texas Court of Criminal Appeals to tell us why they think that but that doesn't happen and for that reason when the case goes back in front of the trial court during 11071 proceedings the trial court says no this was an objection to the sentence not to the conviction so if you if you if you've gotten to the merits yes if you've gotten past procedural bar what when you the the state habeas court did have a lot of findings and most of them did seem to assume well I just need to assess if there's sufficient proof that he anticipated death might occur but I would say when you read through those pages and those paragraphs there are conclusions as to direct understanding that deadly force would be used you disagree and you probably know him by heart but I'll you know I'll help you a little bit the court also finds that applicant thought his role in Oshman's robbery was to use deadly force against the police if necessary how isn't that how doesn't that meet the the Tyson culpability scienter I think that if he had been convicted under 702 B then that would perhaps but why help me out and I may be just missing a glaring thing but why if the objection isn't to a ring jury finding issue why do we have to go beyond the state habeas courts finding a fact that scienter was of this level of proximity not to attenuate it because we don't know that he was a major participant in that problem so the argument is the first prong it's not the second prong okay I didn't fully understand that from the briefs I agree with him saying that they're all equal and I mean he said himself I mean that's a really bad fact isn't it that they're all equal they all made this plan and he's got four guns at least that he's ready to shoot out with the police so he's not he's not just waiting in the getaway car Judge Elrod if you and I and Judge Higginson and Judge King were on Mr. Murphy's sentencing jury that's exactly the conversation we would be having but why is it relevant why are we asking I mean the state habeas court makes findings that they plotted to use deadly force they all were prison felons crimes of violence then he's the lookout he's monitoring the radio and Hawkins is going around the corner he says get ready that sounds how could any what case would say that isn't major participant what case do you have well I don't have a case that says that's not major participation Judge Higginson what I have is a laundry list of cases that say that is the question that has to be answered and it wasn't answered but it is answered by the state habeas court I understand that you are suggesting that there are propositions in the state courts findings of fact and conclusions of law that could be deemed by that court to satisfy the major participant criteria that's what we did in Foster v. Quarterman essentially what I think this court did in Foster v. Quarterman was not address that question the court below in Foster v. Quarterman which granted relief said that this is a ring problem it came to this court and the court said that the state habeas court specifically found the presence of the Tyson criteria it didn't parse through the findings of fact and conclusions of law to say that if the state court had used the language that is required by Tyson namely major participant and reckless indifference these are the findings that would have supported that conclusion it looked at the state record and it said the state court found that Foster was a major participant and recklessly indifferent and that didn't happen in our case I guess just stepping back to your statement so the COA debatable issue here is not what was debated in our court I think in Gungor v. Thaler v. Foster v. Quarterman whether the Texas anticipated scienter can stand up against Tyson your argument is no finding as to major participant that's the argument you are making to us I'm making yes I'm making that argument I would be making the additional argument if there had been such a finding so if there had been a finding in the state court of major participation then my argument would be the state court can't do that under ring and what this court needs to do is address the question that judge Owen was addressing in Gungor and address whether following ring Bullock against Cabana is still the appropriate standard such that an appellate court can address those issues now there are reasons to think that at least some of the judges on the court of criminal appeals or at least one soon to be retiring judge thinks that the answer to that question is no in her concurring opinions in both ex parte Medrano and ex parte Wood judge Alcala said these are basically eligibility criteria after ring and we can't do this anymore but the fact is that neither the Texas court of criminal appeals nor this court has expressly addressed that question the Texas court of criminal appeals has not had an Edmund Tyson case since ring where it has said notwithstanding ring we still think an appellate court can reach these findings and was this your exact argument to the district court about participant our exact argument to the district court was that we had not made the argument on direct appeal that was attributed to us by the Texas court but you're not arguing element of guilt jury finding you've disclaimed that explicitly so in my mind I put the ring argument aside and I'm focused on Edmund Tyson at punishment and now it helps me you've narrowed that to the major participant prong so if I'm following you then I get to and I've you know printed it out here of course I did the state habeas court rulings and and why am I why wouldn't we be looking at those thinking we can assess whether that's a finding of substantial participation or major participant or not why aren't I mean there's 10 pages of extraordinary participation am I not you saying the law says we can't look at those state habeas findings or you're saying there's nothing to tell us that equals major participant but in quarter mean we said it's common sense the inference from the habeas court findings didn't we know Foster v. quarterman I think you can make inferences that follow naturally but I think you also have to look at the syllogism that was built by the state trial court and what the state trial court says at the end of those paragraphs that you've just been quoting from is that 370712 takes care of all of these problems so what the state trial court thinks is that it is the Texas anti-parties instruction that solves the problem here and I think that if the state trial court thought that oh gosh we don't even need the anti-parties instruction because we've got the culpability findings that are required under Tyson it wouldn't have to say that but that's exactly what it says and the anti-parties instruction doesn't ask the jury to conclude anything you haven't had a chance to address your other two arguments and so I think each side should have five more minutes of argument unless somebody objects well one of the other two arguments Judge Elrod unless this panel is inclined to overrule the Supreme Court's 5-4 decision in Davila is I think really an argument that I'm going to have to leave by the wayside the remaining ineffectiveness argument is I think adequately briefed I don't really know that I have a whole lot to add I think that the briefing indicates that the principle basis for the lower court's conclusion that Ms. Busby's performance at trial had not been deficient was its belief that there was nobody doing mitigation investigation until the Supreme Court decided Wiggins and that is simply flatly contradicted by evidence that's part of the record and indeed if that were the case then Wiggins wouldn't have come out of the way there seems to be something here and counsel doesn't but if Wiggins the lawyer does get mental health expert and they don't find it what's the case that then says that's still IAC I don't know that there's a case that says that Judge what I would say is I think an appropriate answer to that question is that at least in my experience when the psychologists who are hired by trial lawyers and appellate lawyers to examine their clients to reach psychological or psychiatric diagnoses perform that exercise they also look at all of the other evidence that counsel have collected including social history evidence which is part of that diagnosis so a psychologist is not going to make a diagnosis of PTSD without having some baseline that baseline is created by the entirety of the mitigation investigation and that didn't happen in this case but you know for mental health people that the trial court had that's really hard to say that that's ineffective when none of them said that this is not like a case where they've done nothing and we have seen those cases this is very different and then prejudice is also a problem well I think all we're talking about is prejudice no but I mean but but on the idea that PTSD itself wouldn't be mitigating because it would show that he might be explosive or something and there and that's not a positive thing under the circumstances so how can you win on this I think that the I think if I if I win on the first prong if I win on the first prong in this court agrees that the performance was deficient for what for failing to press beyond mental health press beyond for mental health people a full complete mitigation investigation okay for failing to do a full complete and your best case for that is is Rompilla is Wiggins and Rompilla yes and and in fact but in Rompilla it was government had given aggravating evidence lawyer so that's sort of distinguishable well they it's it's clearly the mistake in Rompilla or the deficient performance in Rompilla was not identical to the deficient performance in this case I agree with that but the deficient performance in this case was simply not hiring a mitigation investigator where what the mitigation investigator is going to learn in the course of the mitigation investigation is part of the raw material that the psychiatric professionals are going to use when they make their diagnosis I would have judge Elrod maybe the simplest way for me to make this point is that I would have a much richer basis for a mental health professional to make a diagnosis that would be useful purposes of answering the mitigation question in my favor if I had a full social history that could have been given to that professional and we didn't have that what about her judge Elrod's point I mean I would think the double-edged line of authority in our court would apply at the prejudice stage to wrong or right it does okay so and if Miss Busby if the trial lawyer had made the decision she testified you're saying it wasn't informed she wasn't even aware of it so then double-edged drops out if you're not aware and if she had testified at the federal evidentiary hearing that yes I knew all of that stuff we did it and the reason that I didn't put it on was because I made the tactical decision that this would have been worse for Mr. Murphy than it would have benefited Mr. Murphy that would have been that but that's the first prompt of whether that was ineffective or not that we can look at the merits of it and say it wouldn't have been helpful in any event for prejudice and even if she didn't know you can certainly do that yes you agree we can waive aggravating and mitigating factors and nullify mitigating if there's we've done that before I think if she makes a decision that the aggravating effect of the evidence is going to outweigh the mitigating effect and that's an informed decision then yes you can reach that conclusion when you are performing that analysis however you do in fact have to take all of the evidence that's been presented into account you can't look only at the piece of evidence that wasn't given to the jury thank you thank you we have your argument you save time for rebuttal may it please the court the facts of this case completely dispose of Murphy's claims as one of the Texas 7 Murphy's role was in his own words to initiate firefight in the case of a standoff situation to that end he sat in the car with four loaded weapons including an AR 15 he monitored the police scanner and he communicated with the heavily armed and violent escapees inside of the store these facts make clear that reasonable jurists would not debate any of his three claims the requirements of Edmund and Tyson are met his appellate counsel cannot be ineffective and he has no substantial IATC claims this court should thus deny Murphy a COA turning first to his Edmund and Tyson related claims Murphy alleges that the death sentence was unconstitutional because the jury did not make the requisite findings under Edmund and Tyson however this claim fails for two reasons first and foremost it is completely without merit Edmund and Tyson stand for the proposition that the proportionality standard embodying the eighth amendment prohibits the imposition of the death penalty on a class of people who although otherwise guilty under state law did not kill did not intend to kill or who are not major participants in the offense with a reckless disregard for human life what Edmund and Tyson do not stand for is the proposition that the jury need to be the one to make those findings indeed although my colleague is relying on Apprendi and Ring before this court today there is nowhere in the briefs before this court that he cites to Apprendi or Ring although it was cited to in the district court so that claim is now forfeited what if it's not forfeited what do you do with Apprendi and Ring? that would be disposed of at the guilt innocence phase of trial Apprendi, Ring and Hurst stand only for the proposition that those facts which would increase the maximum punishment applicable to a defendant under state law under statute must be found by a jury it does not stand for the proposition that those facts under constitutional considerations need to be found by a jury therefore they are disposed of at the guilt innocence phase of trial under Texas law where the aggravating factors sufficient to make a crime capital murder and therefore put the death penalty on the table so you're saying forfeited if not forfeited Judge Owens dissent has it right and is it correct or not correct that no court has found that Edmund Tyson factors must be found by a jury beyond a reasonable doubt yes your honor to both questions Judge Owens has it right in Gongora and it's true that there is no court case that has found that Edmund Tyson needs to be found by a jury and you're saying they didn't present it to us so what they have presented is they don't have the procedure bar doesn't exist and on the merits there is it's debatable whether in the spectrum between Edmund and Tyson this non-shooter has sufficient culpability when phrased that way which seems to be accurate legally it would almost seem to me it's always debatable factually you have horrific Tyson type facts these aren't those in my mind you may say they're very bad but nor are they completely sort of attenuated Edmund facts so why isn't it just debatable just on that assessment it's a spectrum it's a fact specific finding people could debate well it is certainly fact specific I think the facts here are not at all debatable I think the facts here more than satisfy the requirements of both major participation and reckless indifference although he appears to be abandoning perhaps the reckless indifference here I will still go through them to show well that I did that seem like a fairly direct concession I agree so so then if we turn to major participant what's the clearest paragraph in the state habeas courts finding that you think resolves that or gets deference that we would give it factually I don't have the specific numbers okay evidence that would support it was that the state habeas court found that the group contemplated and plotted the robbery contemplating the use of lethal force together they Murphy's particular role was determined that he would sit in the car as a lookout he sat in the parking lot he monitored the police scanners and to which he himself had programmed the various radio frequencies of the Irving area and had learned all of the regular the codes that were relevant to that area. He then kept them apprised while they were inside of exactly where the police officers were he told them that there was a suspicious person's call he told them that police officers were on their way and he also told them exactly where officer Hawkins was in relation to them i.e. in the back of the store he therefore as the state habeas court found explicitly afforded the inmates an advantage over officer Hawkins that officer Hawkins did not have and so that in function it ended up being an ambush on him. That is precisely why the others were allowed to shoot officer Hawkins 11 times and then ultimately ended up running over him before leaving the scene Murphy clearly majorly participated in this offense he also even though he knew that there was a shootout and even though he knew that officer Hawkins had died continued to engage in criminal activities with this group ultimately fleeing to Colorado and ending in a standoff. I think the evidence is clear under the state habeas court sufficiency findings that he was a major participant and as this court has found in Foster and Clark the sufficiency findings are more than sufficient to establish the requisite Edmund and Tyson findings in addition to the anti-party special issue which was found by the state habeas court when resolving this claim. And in addition the second reason for why this claim fails is because it is procedurally barred despite Murphy's protestations this claim as a sentence challenge was not raised on direct appeal to judge Higginson's questions about the record citations. The only time that he clearly raises a punishment challenge based on Edmund and Tyson in the trial court was not until the punishment phase of trial it was in the reporter's record that's 49 that was dealing with specifically the anti-party special issue the only citation that he relied on to the CCA on direct appeal was pages 4 and 5 of the guilt innocence phase of trial. But when he does quote directly from issue 18 that paragraph does sound like it's an imperfect but still focused on punishment Tyson type challenge. I would argue your honor that the style of the heading and the only factual support he proffers were both related to the guilt innocence phase of trial. The style of the case or the style of the claim was in fact a trial court error for overruling the objection and the objection that he was citing to was at the guilt innocence phase of trial. Under exhaustion principles for example by analogy in the Supreme Court case to Baldwin v. Reese a court's not required to look outside of the brief in order to find material that would support that. And given that the only material that he relied on and pointed the court to was for a directed verdict at the guilt innocence phase of trial that's the only time that he mentioned Edmund and Tyson specifically in those pages. There was no defense case at guilt right? There was no defense guilt. What was his closing argument theory that he was a lookout that didn't have any real connection? Was it essentially that? Yes that's correct. So that sort of is a Tyson type argument. I'm really attenuated. I didn't want to go in there at all. I told him I didn't want to go in there and then it got chaotic. In a way certainly that evidence would go to Edmund and Tyson. However again he was seeking a directed verdict that is an acquittal at guilt innocence before the jury had entered its conviction based on Edmund and Tyson. And Cabana at that point had made absolutely clear that Edmund and Tyson could not preclude a conviction. And it established no new element of the crime of capital murder. So at the period that he asked for Edmund and Tyson he was not saying the punishment charge later could not apply here. He was asking for a directed verdict. And as such and because that is the record that he pointed the CCA to on direct appeal it is perfectly reasonable that that is how they construed the claim. And it is therefore also perfectly reasonable that when the state habeas court addressed his claim which he again raised a conviction challenge on state habeas. In addition to this time a clear punishment challenge. It was two points of error. It was point seven and point eight. Both raised Edmund claims. One was conviction. One was state habeas. So the problem continued through state habeas. And that is precisely why when the state habeas court addressed these claims he found that he did not raise a punishment challenge on direct appeal. And that he could have and should have. And as such he was procedurally barred from doing so now. Because reasonable jurists would not debate the procedural bar and moreover would not debate the merits of this claim. I ask this court to deny COA. And if the court has no further questions on the Edmund and Tyson claim I'll turn very briefly to the IATC claims. Just that you would have us dispose of it on the forfeiture point? I mean, if we were going to address this in order it would be forfeiture, then procedural bar, then merits, right? If it's forfeited. On the Edmund Tyson claim? Yeah. To the extent that he's relying primarily on apprendee now, yes, that would be forfeited. Because he does not at any point in his reply or his opening brief cite to apprendee, Ring, or Hurst. Then secondly, it would be procedurally barred. And finally, of course, it would be without merit. And I understand that we're not judging this as what the trial judge should have given in the instructions, that that's not the proper question before us at this stage of the case. But it does seem that it would have been really pretty easy to give these instructions and then we wouldn't all be here today. Is that the advice? Do you know what the state of Texas does now for its DAs and things on this type of thing? The state of Texas does submit the anti-party special issue at the punishment phase of trial. And the legislature enacted the anti-party special issue after Edmund and Tyson came down. They enacted it in 1991. That was their attempt to comply with the requirements of Edmund and Tyson. That's precisely why the CCA here, as an alternative matter, found that the submission of the anti-party special issue was enough. And given that, again, the jury need not make these findings under Cabana, and also given that there's no clear Supreme Court authority requiring either the enumerated words in Tyson or requiring any other magic words in order to comply with the findings of Edmund and Tyson, it is perfectly reasonable that they would rely on a special issue, which is only submitted to the jury on punishment where a defendant is convicted at guilt-innocence as either a party or a conspirator, and asks the jury to answer in the affirmative whether they believe that the defendant did actually anticipate that human life be taken. But the only time we really faced this, I think, the lad question of whether that's an equivalence to reckless indifference, was in our 2006, you know the case, what was it? Gongora v. Thaler, where we did grant COA on the issue, right? But then the case gets eventually resolved in 2013 on a separate prosecutorial error, right? I believe that's true. So in 2006, looking at exactly the proposition you just said, that anticipated suffices under Tyson, our court said that's debatable and granted COA. Well, Your Honor, in Foster, the court— No, I'm not asking about Foster. I'm asking about Gongora v. Thaler. Yes, that's true, Your Honor. So how — what's changed? I just believe that under AEDPA, the question here is whether it's reasonable, and it is perfectly reasonable given the lack of clear Supreme Court authority to the contrary. Here, the only clear Supreme Court authority— Right. The question, though, before us isn't whether it's reasonable. The question is whether it's debatable, right? That's correct, Your Honor. So, well, then, why wouldn't we do just what the panel did in Gongora v. Thaler and say this is debatable? What's changed to say it's now not debatable? Our position, Your Honor, is just that it is not debatable. So you're saying that panel was wrong? Well, Your Honor, our position is that it's not debatable. We believe it's perfectly clear and that it was perfectly reasonable and that no reasonable jurist would debate that the district court found that that was reasonable. But we don't have to get to that with your two other arguments? Is that what your position is? Yes, Your Honor. In part, our other position is also that based on this court's precedent in Foster and in Clark, regardless, we can look at the sufficiency findings of the state habeas court, and certainly it is not debatable that the state habeas court here found sufficiently with Edmund and Tyson. I would think your answer would be that today he's conceded that the issue that they granted COA on is not the one he's pressing. That is true, Your Honor, that he is conceding that's not the one he's pressing on. Okay. Well, I mean, that's fine. That's correct. And the one he is pressing is, again, forfeited and procedurally barred. And because ultimately jurors would not debate the merits of this claim, in that Murphy is undeniably a major participant in the offense with a reckless disregard for human life and would not debate the procedural ruling, COA should not issue on this. He must demonstrate both, and he cannot demonstrate both. Now, turning briefly to the IATC claims, he has two, but he only focused on one today, so I will also only focus on the Wiggins claim. First of all, he claims that they were adequately briefed. However, and again, the IATC claims were both unexhausted and procedurally barred, and despite being procedurally barred and despite the requirements of SLAC where he must seek COA on both the procedural determination and the underlying merits, he did not seek a COA on the procedural determination with regard to the IATC claims, and he does not at any point in his argument even cite to Martinez or Trevino. Therefore, we would argue that this claim is waived. But regardless, he cannot benefit from Martinez and Trevino because his IATC claim with regard to the mitigation is simply not substantial. The evidence is clear that there was a more than adequate mitigation investigation in this case. The trial team consisted of two trial counsel, one consulting appellate counsel, one fact investigator, and four mental health experts, as Your Honors pointed out earlier. All of those uncovered the extensive evidence of his troubled childhood and came to several diagnoses of mental health issues but did not come to a PTSD diagnosis. And to Judge Higginson's questions earlier, there is no case that says that where she relied on her experts and they did not come to that diagnosis, she is deficient. In fact, it is the opposite. Trial counsel is reasonable for relying on her experts, particularly four mental health experts here. What's the best case for that? Turner v. Epps, Your Honor. Citation on that is 421, Fed Appendix 696. And again, contrary to Murphy's claims, although she did not hire what was quote-unquote a mitigation expert because that was not a term until Wiggins came down in June of 2003, she had been conducting an extensive mitigation investigation, which is under clear constitutional law required of her. She is not required under any Supreme Court law to hire a mitigation expert. She is required to conduct a mitigation investigation, and she did do that. She, in fact, had conducted one for at least two years prior to trial. Then once Wiggins came down, Dr. Viggen, I'm actually not clear on the pronunciation of that either, he redid a lot of the investigations she had already did, including speaking to multiple family members, flying to many parts of the country, and conducting extensive interviews with Murphy. So it's the label that's the weird thing, whether you call it a mitigation expert or whether you call it a team of people to look into the past and the mental health situation and all of that. Is that how you interpret it? As best as I can interpret this claim, given how extensive her trial team was, that must be the only difference is that she didn't hire someone who by title was a mitigation expert. He cannot simply dispute on the facts here that there was a mitigation investigation conducted. Therefore, to me it seems an issue of almost semantics, particularly where the mitigation investigation and presentation was extensive. She had multiple witnesses testify, including Dr. Viggen himself, who gave ample evidence of the troubled childhood along with Patrick's aunt and Patrick's dad. That's unusual to get the parent in there and the aunt. I mean, you don't usually have those people testify in these cases. Correct, Your Honor, and trial counsel was able to get them to do so here. So much of the evidence that he alleges would have led to the PTSD diagnosis was already presented to the jury, and in fact there's just no way he can prove that it would overcome the ample, aggravating evidence that was presented at trial. In addition to all the facts that I discussed with regard to the Edmund and Tyson claim, it's clear that he also participated in the violent escape from the Texas prisons. He also had an inciting note that said death to tyranny and seemed to be inciting a revolution. He participated in the auto zone robbery. But if mental health experts are commissioned but then they miss something like a severe organic brain injury in youth, they just miss it. And if we were to get past and assume there's deficiency on prejudice, I've never quite understood this. In the prejudice analysis, can we still say overwhelming evidence of guilt and brutality and therefore just do a weighing and say, well, it doesn't matter, even if the jury had heard about this? That's correct, Your Honor. That's precisely the analysis that we would engage in at the prejudice point. We would weigh the mitigation evidence that was proffered and that was actually presented, and we would compare that to the aggravating evidence, which would include evidence of his guilt. In addition to other aggravating evidence that is offered at the punishment phase of trial, for example, prior offense, which wouldn't have been submitted during guilt-innocence, and those here included. But arguably that type of evidence, if there's a misdiagnosis of sort of organic brain injury, then that might explain all the government's aggravating evidence. It's hard to weigh it because the argument would have been, well, jury, this is all explained by this condition that the person had that wasn't discovered. You see what I'm saying? Well, certainly, Your Honor, and that's precisely his argument here. He alleges that the PTSD would have explained all of the other mitigation evidence. But again, at the end of the day, we are doing just a weighing analysis of what was proffered and what they're proffering now. And here it simply cannot be the case that when presented with all of the evidence that had led to or allegedly led to where that weighing would ever come out. Where's an example where our courts ever said, well, we're going to hypothesize what was in the mind of the jury, and even though this would have explained away all the aggravating, I guess I'm thinking it's going to be government wins every time. So do you have a case where the government doesn't win? Well, Wiggins and Rompia, Your Honor, in both of those, the evidence was significantly mitigating that they found that had the jury been presented with it, it would have overcome the aggravating. But in both of those, in particular, they relied on a failure to investigate or an inadequate investigation, and we simply do not have that here. Because this is not like Adkins, where organic brain issues or what brought upon by stress or whatever, we don't treat those the same as Adkins issues that are freestanding, basically, claims of why you can't be executed. Correct, Your Honor. This is just an additional thing that they would have offered in mitigation. And as Your Honor has pointed out earlier, it can certainly be double-edged. The closer that you approach essentially the idea that maybe he didn't have a choice in those proceedings, the more that can contribute to something like future dangerousness. The more you're trying to say he has PTSD and he can't control his temper, there are explosions, again, that contributes to future dangerousness. And those considerations can be weighed at the prejudice phase of trial, or the prejudice phase of this inquiry, whether or not trial counsel made a reasonable decision based off those would go to deficiency, but this Court can weigh the value of that both in aggravation and in mitigation at prejudice. But the double-edged quality of that type of mitigation, we can't do that if the lawyer didn't even know, didn't at the time say, I know about this and here's why I didn't do it, right? It's not a post hoc. There's no case law that says, correct me if I'm wrong, that when we're assessing deficiency, that the government can say, well, you know, it's double-edged, if the lawyer hadn't even known about it. That's correct, Your Honor, when assessing deficiency. So deficiency, we can't say that it was reasonable trial strategy, but for prejudice, we can. And so for prejudice, the double-edged nature of the evidence would certainly weigh in both aggravation and mitigation here. And in such a case, the courts have found that the prejudicial, that there's not a high prejudicial value in that sentence. How would you seek for us to resolve that claim, this claim that we've been discussing at length here? First of all, I would find that he did not adequately brief it, and so it is waived before this Court. Secondly, I would find that it's procedurally barred and, well, unexhaustible and procedurally barred, and that he can't overcome Martinez and Trevino because he does not establish that state habeas counsel was ineffective, particularly in light where the underlying claims are meritless. He cannot establish that state habeas counsel is ineffective. And then finally, I would argue that the trial counsel was not deficient, nor is there any prejudice, and therefore, because he cannot show a substantial IATC claim, he would not be availed of Martinez and Trevino. Those are three separate arguments, right, any one of which would be satisfactory for you to prevail. Correct, Your Honor. If the Court has no further questions, because Murphy fails to show that reasonable jurists would debate the district court's rejection of any of his three claims, I respectfully ask this Court to deny COA. Thank you. Thank you. We have your argument. Mr. Dow, you've saved time for rebuttal. Three quick points, Your Honors. First, with respect to the Edward Tyson claim, we sought a COA on both dimensions of the judgment of the Court below. First, its conclusion that the argument is procedurally barred, and second, its alternative merits conclusion. So I just want to emphasize that I haven't abandoned either one of those. Second, I just want to, without taking back or attempting to take back anything I said earlier in my conversation with Judge Higginson, I want to clarify what I was intending to communicate with respect to this issue that I've been characterized as having conceded. If the jury had found at the guilt phase Mr. Murphy guilty under the first or third of the disjunctive bases for finding him guilty, then I would not have an intent argument here. But I don't not have an intent argument because we don't – and I would have only a major participation argument. But as we stand here, I do not not have an intent argument because we don't know whether the jury found him guilty under Theory 1 or 2 or 3 or 4. And if it found him guilty under Theory either 2 or 4 where the trial court tells the jury, you do not have to find that Mr. Murphy had intent, then we don't know either whether he had the requisite intent or whether he was – I asked you very clearly twice. So it's important. And I was focusing you on the State habeas findings, and you said, I am not contesting Sienter. I'm contesting major participant with focus on the State habeas findings. I'm contesting major participant on the so-called anti-parties instruction. No. I was asking you when we look at the 10 paragraphs or 15 paragraphs of fact findings by the habeas court, what's your position as to Edmond and Tyson? And you really explicitly said our position is the findings aren't sufficient under major participant prong. And you disclaimed that you thought the findings weren't sufficient under intent. That's why I read you the one about his understanding that deadly force would be used against the police. Well, let me just be clear, Judge Higginson, that intent, it's not the same thing as reckless disregard for purposes of the Tyson criteria. Sienter, the mental state, which is what all the courts describe that second prong as. The jury instructions use the word intent in 1 and 3 and say regardless of intent in 2 and 3. Okay. I may be, and I'll check and figure this out, but I'm getting confused when you say jury instructions. I'm asking you to focus on the State habeas court findings. If you're telling me the law says that isn't where we focus, then give me the authority that says that. I'm not asking you what the guilt phase or punishment conference discussion was because it's garbled. I understand. I understand. What I am saying is that if the State habeas court was saying that the reason that Mr. Murphy loses on his Tyson and McClain, regardless of the fact that we don't know which of those four was the basis for culpability, that you can read those findings where the State court is saying we think he had the reckless intent as being the State court saying we think that he showed reckless disregard. But you cannot read those findings to be saying that he was a major participant. That's what I thought. Okay. We're on the same page. And in both, and so, and let me stress, and this was the last point that I wanted to make, in both Gongora and Foster, this court expressly noted that the State court found that the actor was a major participant who had acted with reckless disregard for the life of others. So that when this case went back to the CCA in Gongora, the CCA said he was a major participant. It goes back to the CCA. I'll just tell you all the citation. It's not published. It's 2006, Westlaw 234987, and the jump site is 12. And similarly, when Foster comes to this court from the Court of Criminal Appeals, it comes to this court with a finding from the CCA that Foster acted with reckless disregard and was a major participant. And what I will say finally is that the so-called anti-parties instruction, which is the State court's basis for finding that there is not an Edmund Tyson violation, in this case, that's the State court's merits determination, that the reason that there's no Edmund Tyson violation is because the instruction required in 37071 2b2 was given, and what that says is that the jury has to find that the defendant either caused the death, which of course he didn't, or did not actually cause the death, but he intended to kill that person. It doesn't say anything about major participation. Right. I understand that. I think we have the arguments in this case. This case is submitted. We appreciate your...